UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

FRANCIS E. DYBES, AND OTHERS SIMILARLY SITUATED,

Plaintiffs,

v.

DELTA ELEVATOR SERVICE CORPORATION d/b/a DELTA/BECKWITH ELEVATOR COMPANY,

Defendant.

C.A. No. 04 CV 10076 MLW

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

## I. INTRODUCTION.

This is an action for holiday pay under a Massachusetts statutory provision, G.L. c 149 §150. Defendant Delta/Beckwith removed the matter to federal court on the theory that the claim actually arose under 29 U.S.C. §185, a federal statute conferring federal jurisdiction over suits for breach of labor contracts. Subsequently, Defendant moved to dismiss the action on the alternative grounds that plaintiff's claim is pre-empted either by § 301, LMRA (§ 301 preemption) or by San Diego Building Trades v. Garmon, 359 U.S. 236 (1959) (NLRA preemption). Plaintiff opposes the motion for three reasons: 1) plaintiff's claim for holiday pay arises out of an individual agreement between him and Defendant; 2) resolution of plaintiff's

claim does not require interpretation of the collective bargaining agreement; 3) NLRA pre-emption does not apply to this cause of action.

Two important facts are undisputed and material to the resolution of this motion. The first is that the agreement to compensate plaintiff for Columbus Day was not collectively bargained. The company promised plaintiff this benefit over and above the collectively bargained wages and benefits. The second important fact is that the collective bargaining agreement does not need to be interpreted to ascertain plaintiff's rights to pay for Columbus Day pay. The collective bargaining agreement has already been interpreted and an arbitrator has finally determined that Delta did not have the right to stop paying Columbus Day in 2002.

## II. FACTS.

Plaintiff Francis Dybes is employed by Delta in a bargaining unit of 180 employees. O'Brien Award at 5.[1] Historically the Delta employees were subject to a multi-employer collective bargaining agreement known as the Standard Agreement. O'Brien Award at 6. In July 2002 both Delta and the International Union of Elevator Constructors, AFL-CIO[2] entered into a new collective bargaining agreement referred to as Master Agreement. Id. at 7.

The Master Agreement and the Standard Agreement did not provide that Columbus Day was a paid holiday. O'Brien Award at 10 ("The evidence is uncontroverted that Columbus Day was never celebrated as a paid holiday for most Local 4 members. Therefore, it was an unpaid holiday for these employees in 2002"). A minority of Delta employees ("approximately 22 members of Local 4" according to

[1] The O'Brien Award is attached to the Brink Declaration, submitted by Defendant, as Exhibit C.
[2] The Boston affiliate of the I.U.E.C. is Local 4.

the arbitrator) did receive pay for Columbus Day "for a myriad of reasons". O'Brien Award at 10. Whatever the reason, the benefit was conferred individually, not collectively.

The Arbitrator ultimately held that Delta did not have the right to discontinue a benefit that had become "a term and condition of their employment". O'Brien Award at 10. The Arbitrator summarized his findings as follows:

> "That this paid holiday was not a benefit negotiated on behalf of these employees by Local 4 is immaterial, in this Arbitrator's opinion. Delta Beckwith and its predecessors willingly compensated these employees for the Columbus Day Holiday for a considerable period of time. Indeed, some of them had been paid for Columbus Day continuously since the 1970's. This longstanding benefit became a term and condition of their employment even though it was not rooted in contract negotiations between local 4 and their employers." O'Brien Award at 10-11.

Plaintiff Francis Dybes is one of the Delta employees who was promised pay for (otherwise) unpaid holidays, including Columbus Day.[3] His state court complaint was filed on behalf of "similarly situated employees" (i.e., those other "approximately 22" employees). See G.L.c. 149 §150 ("Any employee claiming to be aggrieved...may...institute and prosecute...for himself and for others similarly situated, a civil action....").

The statute pursuant to which Plaintiff Dybes filed his suit authorizes a private action to enforce certain statutory obligations regarding payment of wages. G.L.c.

[3] Local 4, Dybes bargaining representative, is pursuing grievances under the Master Agreement for President's Day and Patriot's Day. The unpaid holidays, like Columbus Day, have become a term and condition of employment for plaintiff Dybes and others. While the rationale of the O'Brien Award ought to control the disposition of those grievances there has not been a final resolution of the President's Day and Patriot's Day grievances. There has, however, been a final and binding resolution of the Columbus Day issue.

149 §148, commonly referred to as the "Weekly Payment of Wages" statute, specifically defines "wages" as including holiday pay.[4]

## III. ARGUMENT

Defendant argues that Plaintiff's claim must be dismissed because it is pre-empted by federal labor law. According to Defendant, § 301 of the Labor Management Relations Act preempts the claim because the resolution of Plaintiff's claim requires interpretation of the collective bargaining agreement between North American Elevator Services and the International Union of Elevator Constructors. Defendant also contends that so-called Garmon preemption applies because the claim alleges that Defendant engaged in conduct that is prohibited as an unfair labor practice under the National Labor Relations Act.

As the following demonstrates, Plaintiff Dybes' claim for unpaid wages under G.L. c. 149, § 148 is not preempted by § 301 because the Company's promise to pay Dybes for Columbus Day is based in an individual agreement between him and the Company, and because the Court need not interpret a collective bargaining agreement in order to resolve the claim. Additionally, NLRA pre-emption does not apply to Plaintiff's cause of action.

### A. Section 301 of the LMRA Does Not Preempt Plaintiff's Claim.

#### 1. Plaintiff's Claim Is Based on an Individual Agreement with Defendant Delta/Beckwith Elevator Company.

Because he was not paid for Columbus Day 2003, Mr. Dybes filed a Non-Payment of Wage Complaint Form with the state's Attorney General's Office. Complaint at ¶ 13. After receiving from the Attorney General's Office written

[4] G.L.c. 149 §148 ("The word 'wages' shall include any holiday or vacation payments due an employee under an oral or written agreement").

authorization to pursue a civil lawsuit, Mr. Dybes brought a claim against Defendant in Roxbury District Court, pursuant to the Commonwealth's so-called "Weekly Payment of Wages" statute, G.L. c. 149, § 148. That statute expressly includes as "wages", "any holiday or vacation payments due an employee under an oral or written agreement."[5] In his Complaint, Dybes alleged that the Columbus Day pay was owed to him based on an "agreement between the parties," that is, an agreement between him and Delta Beckwith Elevator Company. Complaint at ¶ 5. Plaintiff Dybes' Complaint also alleged, "On information and belief, other employees of Defendant are owed wages, as defined in G.L. c. 149, § 148, for Columbus Day 2003, pursuant to agreements between Defendant and those employees." Complaint at ¶ 10.

In a bargaining unit of 180 employees, Delta Beckwith employs approximately thirty-five to forty contract service employees, who maintain and repair elevators and escalators. O'Brien Award at p. 5. Of those thirty-five or so contract service employees, Arbitrator O'Brien found that only twenty-one or twenty-two were entitled to holiday pay for Columbus Day. It was not a collective bargaining agreement that conferred that benefit on some employees of Delta Beckwith. Indeed, the benefit promised to Plaintiff Dybes and certain other employees was a benefit that those employees enjoyed in addition to the collectively bargained wages and benefits found in the collective bargaining agreement. "There is no question that Columbus Day is not one of the eight paid holidays set forth in Article VI, paragraph 1., of the 2002 –2007 Master Agreement. . . . Nor did Local 4's *Agreement on Expenses* state that Columbus Day was a paid holiday." O'Brien

[5] The statutory scheme for enforcing § 148 also permits a plaintiff to bring a civil action, "in his own name and on his own behalf, or for himself and for others similarly situated." G.L. c. 149, § 150.

Award at p. 9. Rather, the Company's practice of paying Dybes and others for Columbus Day originated in individual agreements with those employees.

> While Columbus Day was never a paid holiday for the majority of Local 4 employees at the Company, it was a paid holiday for approximately 22 members of Local 4. Prior to 1998, Delta Elevator Service and, to a lesser extent, Beckwith Elevator Company did compensate some of their Local 4 employees for the Columbus Day Holiday for a myriad of reasons. Some of these employees were paid for the holiday as part of a 40 hour guaranteed workweek. Others were granted this benefit when they acquired 10 years of service at Delta. Still other Local 4 employees were paid for the holiday as an inducement for them to come to work at either Delta or Beckwith. And one employee was allowed this benefit when he agreed to transfer from maintenance to adjusting duties.
>
> When Delta and Beckwith merged in 1998, these employees continued to be paid for Columbus Day until 2002 when the Company discontinued the benefit. For these employees, a paid holiday for Columbus Day became a term and condition of their employment.

O'Brien Award at p. 10.

Where the resolution of a plaintiff's state law claim requires the interpretation of a collective bargaining agreement, § 301 preempts the claim in order to ensure that such questions are based in federal law, in order to ensure uniformity in the enforcement of collective bargaining agreements. *See* Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 409 (1988). Section 301 does not, however, preempt claims based on individual contracts. In Caterpillar, Inc. v. Williams, 482 U.S. 386 (1987), former employees of Caterpillar brought an action against Caterpillar alleging breach of individual employment contracts Caterpillar had entered into with them. According to the former employees, they had been repeatedly assured that downgrades to bargaining unit positions were temporary, and that they would be employed at other facilities if the particular facility at which they worked closed. When Caterpillar later told them they were being laid off, the employees filed an

action for breach of contract in California state court. Caterpillar removed the case to federal court. The Federal District Court held that removal was proper and dismissed the case when the employees refused to amend the complaint to include a § 301 claim. The Court of Appeals reversed, finding the case improperly removed. The Supreme Court affirmed the Court of Appeals, holding that the employees' state law breach of contract claims were not preempted by § 301 and, as such, were not removable.

> Caterpillar asserts that respondents' state-law contract claims are in reality completely pre-empted § 301 claims, which therefore arise under federal law. We disagree. Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims "substantially dependent on analysis of a collective-bargaining agreement." Respondents allege that Caterpillar has entered into and breached *individual* employment contracts with them. Section 301 says nothing about the content or validity of individual employment contracts. It is true that respondents, bargaining unit members at the time of the plant closing, possessed substantial rights under the collective agreement, and could have brought suit under § 301. As masters of the complaint, however, they chose not to do so.

482 U.S. at 394-95 (emphasis in original) (internal citation omitted).

Here, Plaintiff Dybes has based his claim that he was owed pay for Columbus Day 2003 on an individual agreement between him and the Company. Despite the assertion in Defendant's Motion to Dismiss that Plaintiff's Complaint is "artfully pleaded" to avoid federal jurisdiction, Chapter 149, section 148 of the General Laws expressly covers the instant fact situation. The statute pursuant to which Plaintiff Dybes filed his Complaint in state court provides, in pertinent part, "The word wages shall include any holiday or vacation payments due an employee under an oral or written agreement." Defendant's agreement to, and practice of, paying Plaintiff Dybes for Columbus Day brings his claim squarely within the scope of the Weekly

Payment of Wage Statute. *See* Mass. Practice, Employment Law at §14.4 ("[T]he reference to holiday pay is applicable only when the employer *by express agreement or practice* routinely pays employees for holidays.") (emphasis supplied). Because the oral or written agreement to pay Dybes for Columbus Day was not a collective bargaining agreement, there is no preemption by § 301. According to the Supreme Court, nor can the defendant invoke the "artful pleading" doctrine in order to justify removal or, in the instant case, dismissal.

> Caterpillar's basic error is its failure to recognize that a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement. Caterpillar impermissibly attempts to create the prerequisites to removal by ignoring the set of facts (*i.e.*, the individual employment contracts) presented by respondents, along with their legal characterization of those facts, and arguing that there are different facts respondents might have alleged that would have constituted a federal claim. In sum, Caterpillar does not seek to point out that the contract relied upon by respondents is in fact a collective agreement; rather it attempts to justify removal on the basis of facts not alleged in the complaint. The "artful pleading" doctrine cannot be invoked in such circumstances.

482 U.S. at 396-97 (citation omitted) (emphasis in original).

### 2. Resolution of Plaintiff's Claim Does Not Require "Interpretation" of a Collective Bargaining Agreement.

Whether Plaintiff Dybes' claim is preempted by § 301 depends on whether the Court is required to interpret a collective-bargaining agreement in order to resolve the issues before it. In Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399 (1988), the Supreme Court held that an employee's claim that she had been discharged in retaliation for exercising her rights under the Illinois Workers' Compensation Act was not preempted by § 301 because the resolution of her state tort

claim did not require interpretation of a collective bargaining agreement. The Supreme Court recognized that although the preemptive force of § 301 is "powerful", § 301 does not entirely displace state law in the labor relations context.

> A State may provide substantive rights to workers when adjudication of those rights does not depend upon the interpretation of collective bargaining agreements. Even if the CBA, on one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state law claim can be resolved without interpreting the agreement itself, the claim is independent of the agreement for § 301 purposes.

Arnold v. Cabot Corp., 2000 U.S. Dist. LEXIS 7709, *12 (N.D. W. Va. 2000) (discussing holding in Lingle, citing Lingle) (citations omitted).

As discussed, *supra*, Dybes' entitlement to holiday pay for Columbus Day is grounded in an individual agreement. Arbitrator O'Brien interpreted the relevant collective bargaining agreements and the individual agreements between Dybes (and twenty one other employees) and the Company, and the Arbitrator determined that Dybes and some of his co-workers were owed holiday pay for Columbus Day. The issue of Dybes' and others' possible entitlement to holiday pay for other holidays was not before the Arbitrator and, thus, he did not interpret the collective bargaining agreement or the individual agreements in that regard. The existence of the Dybes agreement with Delta/Beckwith regarding pay for Columbus Day does not require the Court to interpret a collective bargaining agreement. Delta/Beckwith's defense (that enforcement of the individual agreement is inconsistent with the collective bargaining agreement) no longer requires interpretation of the labor contract because an arbitrator already definitively construed the collective bargaining agreement against

Delta/Beckwith. Therefore, resolution of the state law claim is not preempted by § 301.

In Lingle, the Supreme Court determined that the inquiry necessary to resolve the employee's retaliatory discharge claim "does not turn on the meaning of any provision of a collective-bargaining agreement." 486 U.S. at 408. Nor is the resolution of Plaintiff Dybes' claim for unpaid holiday wages dependent on the meaning of terms in the collective bargaining agreement covering the bargaining unit at Delta/Beckwith.

> Thus, the state-law remedy in this case is "independent" of the collective-bargaining agreement in the sense of "independent" that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement. . . . § 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements. In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

*Id.* at 408-410 (footnote omitted).

That a collective bargaining agreement exists between Plaintiff's Union and his employer, and that Defendant attached the agreement to its Motion to Dismiss, does not require that the Court interpret the agreement. Arbitrator O'Brien construed the collective bargaining agreement and determined that it was not the source of Defendant's obligation to pay some of its employees, including Dybes, for Columbus Day.

Although an Arbitrator has already interpreted the collective bargaining agreement and made a final and binding determination vis-à-vis the issue of Columbus Day pay, the Court may nevertheless decide that it needs to consult the agreement in order to resolve the instant claim. Courts have held that merely consulting, or referring to, a collective bargaining agreement does not result in § 301 preemption.

> Despite the breadth of § 301 complete preemption, "not every claim which requires a court to refer to the language of a labor-management agreement is necessarily preempted." In order to help preserve state authority in areas involving minimum labor standards, the Supreme Court has distinguished between claims that require interpretation or construction of a labor agreement and those that require a court simply to "look at" the agreement. We have stressed that, in the context of § 301 complete preemption, the term "interpret" is defined narrowly--it means something more than "consider," "refer to," or "apply."

Balcorta v. Twentieth Century-Fox Film Corp., 208 F.3d 1102, 1108 (9th Cir. 2000) (quoting Associated Builders & Contractors, Inc. v. Local 302, I.B.E.W., 109 F.3d 1353, 1357 (9th Cir. 1997)) (internal citations omitted). *See also* Livadas v. Bradshaw, 512 U.S. 107, 124 (1994) ("[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 211 (1985) ("Of course, not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted by § 301 or other provisions of the federal labor law.").

Thus, the Court may "consult," "consider," "refer to," or "aply" the collective bargaining agreement. Because it need not "interpret" it, Plaintiff's claim is not preempted by § 301.

Not surprisingly one of the reasons that the plaintiff in Lingle chose to pursue a parallel claim in state court was that the state statute permitted recovery of punitive damages, a remedy not available under the collective bargaining agreement. See Lingle v. Norge, 618 F.Supp. 1448, 1449 (D.Ill. 1985)("Recovery of punitive damages is also a possibility where plaintiff brings an action for retaliatory discharge"). The argument that damages beyond what the collective bargaining agreement authorized should not be recoverable persuaded the district court, id and the Court of Appeals. The Supreme Court unanimously disagreed.[6]

Plaintiff Dybes has selected a statutory remedy that imposes multiple damages and attorneys fees on any employer who fails to comply with its obligations under the state wage statutes. Delta/Beckwith responds that holiday pay is a mandatory subject of bargaining and therefore the claim must be pre-empted. Just cause discharge was a mandatory subject of bargaining in Lingle, supra. Layoff protection was a mandatory subject of bargaining in Caterpillar, supra. See Trans Penn Wax Corporation v. McCandless, 50 F.3d 217, 230 (3 Cir. 1995) (rejecting employer's pre-emption argument that "job security in the face of layoffs or discharge –is a mandatory subject of collective bargaining"); Alexander v. UDV North America, Inc., 78 F.Supp.2d 614

[6] The Court commenced its opinion as follows: "In Illinois an employee who is discharged for filing a worker's compensation claim may recover compensatory and punitive damages from her employer. . . . The Court of Appeals held that the application of state tort law was pre-empted by § 301. . . . We disagree". 486 U.S. at 401.

(E.D. Mich. 1999); McDaniel v. General Motors Corporation, 765 F.Supp. 407 (W.D. Mich. 1991).

In Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1 (1987), the Supreme Court articulated a similar rule regarding preemption and subjects of collective bargaining. "Thus, the mere fact that a state statute pertains to matters over which the parties are free to bargain cannot support a claim of pre-emption, for 'there is nothing in the NLRA . . . which expressly forecloses all state regulatory power with respect to those issues . . . that may be the subject of collective bargaining.'" 482 U.S. at 21-22 (quoting Malone v. White Motor Corp., 435 U.S. 497, 504-05 (1978)).

### B. PLAINTIFF'S CLAIM IS NOT PREEMPTED UNDER *SAN DIEGO BUILDING TRADES V. GARMON*, 359 U.S. 236 (1959).

Defendant also moves to dismiss Plaintiff's claim on the ground that the claim is preempted by federal law because the allegation that Defendant did not pay Dybes for Columbus Day in 2003 is an allegation that Defendant engaged in a prohibited unfair labor practice. In support, Defendant notes that Dybes' Union filed an unfair labor practice charge against Defendant when it failed to pay certain of its members for the 2002 Columbus Day holiday.

The Supreme Court has held that when an activity is arguably subject to § 7 or § 8 of the NLRA, the states as well as the federal courts must defer to the exclusive competence of the NLRB if the danger of state interference with national labor policy is to be averted. San Diego Building Trades v. Garmon, 359 U.S. 236, 245, 79 S.Ct. 773, 779-80, 3 L.Ed.2d 775 (1959). The Garmon preemption rule is "intended to preclude state interference with the NLRB's interpretation and enforcement of the integrated scheme of regulation established by the NLRA." Chaulk Services, Inc. v.

Massachusetts Commission Against Discrimination, 70 F.3d 1361, 1364 (1st Cir. 1995) (citing Golden State Transit Corp. v City of Los Angeles, 475 U.S. 608, 613, 106 S.Ct. 1395, 1398, 89 L.Ed.2d 616 (1986).

In 2002, when Local 4 filed a ULP Charge regarding Defendant's failure to pay employees for Columbus Day 2002, the National Labor Relations Board declined to assert unfair labor practice jurisdiction and sent the parties to arbitration, pursuant to the Board's policy articulated in Collyer Insulated Wire, 192 NLRB 837 (1971). *See* Affidavit of Attorney Paul F. Kelly, attached hereto as Exhibit 1.

Defendant's argument for the NLRB's jurisdiction over Plaintiff Dybes' claim is belied by the very example Defendant labels as "telling." When Local 4 filed its ULP Charge in 2002—before the Union and the Company went to arbitration, had the collective bargaining agreement interpreted by Arbitrator O'Brien, and received a final and binding determination that Defendant's individual agreements with some of its employees obligated it to pay them for Columbus Day—the NLRB did not assert jurisdiction over the Charge. The NLRB's deferral to arbitration allows the dispute resolution process in the collective bargaining agreement to resolve unilateral change issues. NLRB deferral, like § 301 pre-emption, serves the policy of uniform interpretation of labor agreements.

Garmon pre-emption serves the purpose of preserving to the NLRB the regulation of those labor activities that the NLRA defines as unfair labor practices. Garmon preemption "rest[s] on a determination that in enacting the NLRA Congress intended for the Board generally to exercise exclusive jurisdiction in this area." Brown v. Trustees of Boston University, 891 F.2d 337 (1 Cir. 1989) citing

International Longshoreman's Association v. Davis, 476 U.S. 380, 391 (1986). Garmon pre-emption is limited to disputes over which Congress intended to give the NLRB exclusive jurisdiction. Brown, supra at 363. If Congress intended to give the NLRB exclusive jurisdiction over non-payment of wage claims it might have made failure to pay wages an unfair labor practice.

Defendant's Garmon pre-emption argument is an afterthought. The NLRB itself has not asserted exclusive jurisdiction over the holiday pay dispute. The Court should similarly decline to find the dispute is within the NLRB's exclusive jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss.

## V. REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(d), Plaintiff requests a hearing on Defendant's Motion to Dismiss.

Respectfully submitted,

FRANCIS E. DYBES AND
OTHERS SIMILARLY SITUATED

By his Counsel,

Paul F. Kelly, Esq. BBO#267000
Michael J. Doheny, Esq. BBO#644476
Segal, Roitman & Coleman
11 Beacon Street, Suite 500
Boston, MA 02108
617-742-0208

## Certificate of Service

I hereby certify that a true copy of the foregoing Plaintiff's Opposition to Defendant's Motion to Dismiss was served upon Patricia M. Sabalis, Esq., Downs, Rachlin & Martin, 199 Main Street, P.O. Box 190, Burlington, VT 05402, counsel for Defendant, by first class mail this 28th day of January, 2004.

Michael J. Doheny

PFK/3002/03401/Plaintiff'sOpposition.doc