UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DONALD E. SULLIVAN,            )
    Plaintiff,                  )
                                )
v.                              )   C.A. No. 98-12395-MLW
                                )
RAYTHEON COMPANY ET AL.,        )
    Defendants.                 )

MEMORANDUM AND ORDER

WOLF, D.J.                                         August 19, 1999

This case was originally filed in Middlesex Superior Court on or about November 3, 1998. It was served on the defendant Raytheon Company ("Raytheon") on November 13, 1998, and removed by Raytheon to this court on November 23, 1998. Defendants Raytheon Employees Disability Trust and Metropolitan Life Insurance Co. consented to and joined in the removal. Plaintiff moves to remand the case, asserting that a case that includes a claim under Massachusetts workers' compensation law cannot be removed to federal court, even where one of the claims is an ERISA claim, because 28 U.S.C. §1445(c) makes claims under workers' compensation nonremovable. Defendant opposes the motion and states that: (1) plaintiff's workers' compensation claim is preempted by the Labor Management Relations Act ("LMRA"); and (2) regardless of preemption, the court has supplemental jurisdiction over the claim. For the reasons stated below, plaintiff's motion to remand is being denied.

1

I. FACTS

Plaintiff's Complaint alleges the following. Plaintiff Donald Sullivan first began his employment as a security guard with Raytheon in 1965. Complaint at ¶5. He sustained his first industrial accident at Raytheon in 1971 or 1972 when he tripped and fell. Id. at ¶6. He sustained his second industrial accident in 1978 when he slipped on grease and injured his neck, shoulder, elbow, knee, hip, and back, resulting in Sullivan being out of work for several months. Id. at ¶7, 8. When he returned to work in 1978, he continued to receive medical treatments while performing his regular duties. Id. at ¶9. In 1984, plaintiff sustained a third industrial accident, injuring his shoulder, neck, back, and knees, and was out on workers' compensation for about a year. Id. at ¶10. Sullivan returned to work in 1985, performing all of his regular duties except driving, due to his neck. Id. at ¶11.

Plaintiff sustained his fourth industrial accident on March 24, 1988. Id. at ¶12. He did not miss significant time from work, but he did receive medical treatment. Id. On May 27, 1988, Sullivan sustained a fifth industrial accident and was out of work on workers' compensation for one year. Id. at ¶13. He returned in May, 1989 with certain restrictions because of his industrial accidents. Id. at ¶14.

"The reasonable accommodations required for Sullivan were that

2

there would be no prolonged standing or sitting, no extensive walking, no lifting, bending, and remaining out of cold and damp environments." Id. at ¶15. Sullivan was forced to work beyond his limitations and as a result missed time from work because of his impairments and pain. Id. at ¶16. He sustained a sixth industrial accident in December 1989 and a seventh industrial accident in 1990. Id. at ¶17. After these accidents, his impairments became even more severe and as a result of the impairments and increased pain, his absenteeism rate increased. Id. at ¶18.

In the spring of 1989, Sullivan was assigned as a security guard at the Gore Building, an assignment within his physical capabilities. Id. at ¶19. On June 28, 1990, Sullivan was given a written warning for "sick leave abuse." Id. at ¶20. On September 16, 1991, he was given a 30-day suspension for excessive absenteeism. Id. at ¶21. On March 31, 1992, Raytheon discharged Sullivan for excessive absenteeism, the pattern of the absences, and abusing sick leave. Id. at ¶22.

Prior to July 18, 1994, Sullivan filed a claim with the Department of Industrial Accidents ("DIA") for worker's compensation benefits. Id. at ¶23. An administrative judge of the DIA ordered benefits for Sullivan. Id. at ¶24. See Order of August 4, 1994, Exhibit A.

Sullivan was a member of a labor union, the Raytheon Guards

3

Association, and subject to a collective bargaining agreement with Raytheon. Id. at ¶25. When he was discharged on March 31, 1992, he filed a grievance with the Union to determine whether Raytheon had just cause for the discharge. Id. at ¶26. After an arbitration proceeding, the arbitrator found that Sullivan's discharge was "not for proper or just cause" and ordered him reinstated retroactive to March 31, 1992. Id. at ¶27. See Decision dated August 14, 1995, Exhibit B. A DIA administrative judge found that Sullivan was partially disabled from March 22, 1992 to October 11, 1994, and that he was totally disabled form October 12, 1994 to the present time. Id. at ¶28. See DIA Decision dated August 10, 1995, Exhibit C.

Pursuant to the arbitrator's August 14, 1995 decision, Sullivan wrote to James Kavanaugh, counsel for Raytheon, and requested information to file an application for disability benefits. See Letter dated August 23, 1995, Exhibit D. He received no written response, but he was instructed by counsel to obtain the information directly from Raytheon. Id. at ¶30. Sullivan subsequently requested this information from Raytheon. See September 27, 1995 letter, Exhibit E.

Sullivan received and filled out an application for disability benefits and forwarded the application to Raytheon on November 10, 1995. Id. at 32. See Application at Exhibit F. MetLife denied

disability benefits to Sullivan on March 15, 1996, determining that he was not disabled within the terms of the Plan and that the claim was untimely. Id. at ¶33. See March 15, 1996 Letter, Exhibit G. MetLife requested Sullivan to place a date on his application for disability benefits, which Sullivan had signed, but not dated. Id. at ¶34. See March 18, 1996 letter, Exhibit H. On April 15, 1996, he filed a new application for disability benefits with a date as requested. Id. at ¶35. See Exhibit I.

Sullivan wrote to Raytheon and requested that he either be given disability benefits or, if he was not considered disabled, that he be placed in a suitable position at Raytheon. Id. at ¶36. See June 18, 1996 letter, Exhibit J. He was instructed to file an appeal from the determination denying disability benefits and he did so. Id. at ¶37. See July 22, 1996 letter, Exhibit K.

When Sullivan was not paid disability benefits or reinstated to a suitable position, he filed a charge of discrimination with the Massachusetts Commission Against Discrimination ("MCAD") on October 9, 1996. Id. at ¶38. See Exhibit L.

On September 3, 1997, Sullivan requested that Raytheon provide whatever documents were necessary to appeal the denial of long-term disability benefits. Id. at ¶39. See Exhibit M. On October 17, 1997, the Raytheon Employees Disability Trust denied Sullivan long-term disability benefits. Id. at ¶40. See Exhibit N. On October

22, 1997, Sullivan appealed the October 17, 1997 decision and requested that the Trust provide the Plan documents. Id. at ¶41. See Exhibit O. On November 7, 1997, Sullivan again requested the appropriate Plan documents so Sullivan could file an appeal, but no response was made to that request. Id. at ¶42. See Exhibit P. On December 11, 1997, Sullivan requested the Plan documents again, and again received no response. Id. at ¶43. See Exhibit Q.

Sullivan claims that he was discriminated against in his employment because of his age, his handicap, and/or in retaliation for having exercised his rights to file claims for discrimination with the MCAD. Id. at ¶44. He asserts that defendant has failed to engage in an interactive process to provide a reasonable accommodation for his impairment, and that failure and refusal is a violation of M.G.L. c. 151B. Id. at ¶45.

Sullivan asserts the following counts against Raytheon: Count 1: violation of M.G.L. c. 151B, Age, Handicap, and Retaliation Discrimination; Count 2: violation of M.G.L. c. 152, §75B; and Count 3: violation of ERISA 29 U.S.C. §1140. He seeks to be reinstated to a suitable position at Raytheon and requests that he be provided with a reasonable accommodation. He seeks all back pay from March 31, 1992 until he is reinstated, as well as damages for emotional distress, compensatory damages, reasonable attorneys' fees and costs.

Sullivan also seeks to recover benefits due to him under the terms of the ERISA Plan (the "Plan"), to enforce his rights under the terms of the Plan, and to clarify his right to future benefits under the terms of the Plan. Sullivan seeks to recover a penalty against the defendants for failing or refusing to comply with a request for information. He asks that the defendants be enjoined from engaging in unlawful practices, that he be awarded all equitable relief in accordance with ERISA, that he be awarded $100.00 per day until the defendants comply with the requirements under ERISA, and that he be awarded all reasonable attorneys' fees and costs.

II. MOTION TO REMAND

28 U.S.C. §1445(c) provides that "A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States." Count 2 of the plaintiff's Complaint alleges a violation of M.G.L. c. 152, §75B, the Massachusetts workmen's compensation law.

However, "any state law claim which is subject to complete preemption by the LMRA is considered a claim arising under federal law within the district court's jurisdiction." Magerer v. John Sexton & Co., 912 F.2d 525, 528 (1st Cir. 1990)(citing Caterpillar, Inc. v. Williams, 482 U.S. 386, 393-394 (1987)). A state law claim

is preempted by Section 301 of the LMRA "if the resolution of [the] state law claim depends upon the meaning of a collective bargaining agreement." Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399 (1988).

M.G.L. c. 152, §75B, states, in relevant part, that "[i]n the event that any right set forth in this section is inconsistent with an applicable collective bargaining agreement, such agreement shall prevail." The Court of Appeals for the First Circuit has held that claims under M.G.L. c.152, §75B, are preempted by the LMRA to the extent that a collective bargaining agreement provides standards to govern the plaintiff's claim. See Magerer, 912 F.2d at 529.

> This provision [M.G.L. c. 152, §75B] makes clear that to the extent that the collective bargaining agreement provides standards to govern the conduct underlying plaintiff's retaliatory discharge claim, the claim will be governed by the standards of the agreement, rather than by the standards of ch. 152, §75B. And to that extent, claims under section 75B will require interpretation of the agreement and, therefore, will be preempted by Section 301 [of the LMRA]. See Lingle, 486 U.S. at 408 n. 7, 108 S.Ct. at 1882 n.7 ("if a law applied to all state workers but required, at least in certain circumstances, collective bargaining agreement interpretation, the application of the law in those instances would be preempted").

Id. at 529-530.

Similarly, in Martin v. Shaws Supermarkets, the Court of Appeals for the First Circuit, held that due to a management rights clause, a plaintiff's claim under M.G.L. c. 152, § 75B, was

8

preempted. 105 F.3d 40, 43-44 (1st Cir. 1997). "This is not because the collective bargaining agreement is inconsistent with the state claims asserted, but because it may be so and requires interpretation." Id. at 44.

The only way to determine if the applicable collective bargaining agreement is "consistent" with the state claims asserted, as required by M.G.L. c.152, §75B, is to examine the agreement. In this case, the court may consider this agreement because plaintiff refers to it in his complaint. See Beddall v. State Street Bank and Trust Company, 137 F.3d 12, 16-17 (1st Cir. 1998). "When, as now, a complaint's factual allegations are expressly linked to--and admittedly dependent upon--a document, the authenticity of which is not challenged, that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Id. See Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012, 1015 (1st Cir. 1988); Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994).

Examining the instant case, plaintiff was subject to a collective bargaining agreement as a member of the Raytheon Guards Association. Complaint at ¶25. Under the collective bargaining agreement, Raytheon retained exclusive management and control rights. See Affidavit of Alfred C. Phillips, Exhibit A to Defendant's Motion to Dismiss. To decide plaintiff's claim under

9

M.G.L. c. 152, §75B (Count 2 of the Complaint), this court would have to interpret the collective bargaining agreement to determine whether the management rights clause is inconsistent with M.G.L. c.152 §75B. The court is not permitted to do this. See Martin, 105 F.3d at 43-44, Lingle, 486 U.S. at 408 n.7. Therefore, Count 2 is preempted. Accordingly, plaintiff's motion to remand, which relies on Count 2, is being denied.

III. ORDER

Accordingly, for the reasons stated above, it is hereby ORDERED that:

1. Plaintiff's Motion to Remand is DENIED.

2. A scheduling conference will be held on October 19, 1999, at 2:30 p.m. The parties shall respond to the attached Order concerning that conference. The pending motion to dismiss Counts 1 and 2 will be addressed at the scheduling conference.

_____
UNITED STATES DISTRICT COURT