UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2004 SEP 29  A 11: 35

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| FRANCIS E. DYBES, AND OTHERS SIMILARLY SITUATED, <br><br> Plaintiffs <br><br> v. <br><br> DELTA ELEVATOR SERVICE CORPORATION d/b/a DELTA/BECKWITH ELEVATOR COMPANY, <br><br> Defendants | C.A. FILE NO. 04 CV 10076 MLW |

## DEFENDANT'S MOTION TO RECONSIDER AND TO EXTEND THE STAY OF ORDER TO REMAND

Defendant Delta Elevator Services Corporation ("Defendant" or the "Company") moves this court to reconsider its September 17, 2004 Memorandum and Order ("Order") denying Defendant's Motion to Dismiss on the grounds that the case was not properly removed from state court. The Court based this holding on the conclusion that the instant case was not materially different from *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987). Defendant respectfully submits that, as set forth below, the assumptions about plaintiff's alleged agreement and the application of the current collective bargaining agreement ("CBA") are not supported by the record, and when the law is applied to the facts, removal was proper. As a result, the Court has jurisdiction to consider and grant Defendant's Motion to Dismiss. Defendant also requests the Court to extend its stay of the order to remand until it has considered this Motion to Reconsider.

DOWNS
RACHLIN
MARTIN PLLC

## LOCAL RULE 7.1(A)(2) CERTIFICATION

Pursuant to Local Rule 7.1(a)(2), undersigned counsel certifies that, on September 28, 2004, she conferred with counsel for the plaintiff and attempted in good faith to resolve or narrow the issue presented in this motion. Counsel were unable to resolve or narrow the issue.

## MEMORANDUM IN SUPPORT OF MOTION

### A.  Facts

The undisputed facts are that plaintiff was represented by the International Union of Elevator Constructors, Local 4, AFL-CIO ("Union"), at all times material there was a CBA in effect between the Union and Defendant that governed the terms and conditions of plaintiff's employment, and that plaintiff had received pay for the Columbus Day holiday for several years prior to 2002. In 2002, when Defendant did not pay for the Columbus Day holiday, plaintiff's Union and Defendant submitted the dispute to arbitration pursuant to the CBA. The issues were whether the past practice of paying for the holiday was enforceable under the CBA, and if so, whether the Company had provided the proper notice to the Union to discontinue the past practice. The arbitrator found that paying some employees for the Columbus Day holiday was a past practice that became a term and condition of their employment, that the Company had not provided proper notice to discontinue the practice, and as a result, the Company was required to pay for the 2002 Columbus Day holiday. When the Company did not pay for Columbus Day in 2003, plaintiff filed this lawsuit.

Defendant removed the case to federal court and filed a Motion to Dismiss on the grounds that the matter was preempted by the Labor Management Relations Act ("LMRA"). Plaintiff

opposed the Motion. After oral argument, the Court held that it did not have jurisdiction based on the well-pleaded complaint rule, and denied Defendant's Motion to Dismiss.

### B.  The Legal Standard

The First Circuit Court of Appeals fashioned the standard by which it gauges the propriety of removal when a complaint allegedly raises only state law claims:

> This powerful preemption principle [of § 301 of the LMRA] propels a significant exception to the well-pleaded complaint rule -- the artful pleading doctrine. The doctrine empowers courts to look beneath the face of the complaint to divine the underlying nature of a claim, to determine whether the plaintiff has sought to defeat removal by asserting a federal claim under state-law colors, and to act accordingly.
>
> * * *
>
> In other words, a plaintiff may not, by the expedient of artful pleading, defeat a defendant's legitimate right to a federal forum. . . . if the claim appears to be federal in nature -- that is, if it meets the applicable test for one that arises under federal law -- then a federal court must recharacterize the complaint to reflect that reality and affirm the removal despite the plaintiff's professed intent to pursue only state-law claims.

*BWI Deceived v. Local S6, Industrial Union of Marine and Shipbuilding Workers of America*, 132 F.3d 824, 831 (1st Cir. 1997)(internal citations omitted).

When confronted with a question of subject matter jurisdiction, the district court must review the plaintiff's complaint to determine " whether the complaint, on its face, asserts a colorable federal claim." *Id.* at 832. In *BWI Deceived*, the court found that a state law negligence claim raised a colorable federal claim both under § 301 and because it was arguably preempted via the duty of fair representation.

**C. The Complaint Reveals A Colorable Question Of Federal Law Because Plaintiff Seeks To Enforce A Right Established Under The Collective Bargaining Agreement And Nothing In The Complaint Suggests That Plaintiff Had An Agreement With Defendant For The Payment Of Columbus Day Holiday Pay That Was Independent Of The Collective Bargaining Agreement.**

In its determination that there was no federal question, the Court considered the Complaint and the CBA, and held that Article VI, Par. 2 of the CBA and the allegation in the Complaint "suggests that certain employees were entitled to receive holiday pay for Columbus Day prior to the CBA." Order, p. 3. The Court concluded that plaintiff "alleges that prior to the CBA he had an independent agreement with Delta that provided for holiday pay for Columbus Day and the CBA expressly allows the perpetuation of that Agreement." *Id.* at 5. This conclusion is not supported by the allegations in the Complaint or the reasonable inferences in favor of plaintiff to be drawn from the allegations.

First, Article VI, par. 2 is not relevant to plaintiff's claim for a *paid* 2003 Columbus Day holiday because Article VI, par. 2 applies only to *unpaid* holidays. *See* Award of Arbitrator, pp. 9-10. Thus, this provision regarding unpaid holidays can not "suggest that certain employees were entitled to receive holiday pay for Columbus Day prior to the CBA."

Second, nothing in the Complaint, Plaintiff's Opposition to Defendant's Motion to Dismiss ("Pl. Opposition"), the Affidavit of Paul F. Kelly, the Award of the Arbitrator ("Award"), or the Union's Brief suggests that plaintiff had an agreement with Defendant that predated the collective bargaining agreements between Defendant and its predecessors and plaintiff's collective bargaining representative. Indeed, every document plaintiff filed in this Court is artfully drafted to carefully skirt that issue. In his Complaint, plaintiff alleges only that "[p]rior to 2002, Defendant paid to Plaintiff Dybes holiday pay for Columbus Day each year,

pursuant to an agreement between the parties." Complaint, ¶ 5.[1] Although plaintiff's alleged agreement may have existed prior to 2002, there is no allegation that it existed prior to the long series of collective bargaining agreements between Defendant and plaintiff's Union.

There is no such allegation because it would not be accurate. It is undisputed that collective bargaining agreements existed between plaintiff's representative, the Union, and Defendant and its predecessors for at least 30 years, and that those agreements contained language identical to the language in the current CBA concerning paid and unpaid holidays. The current CBA was only one in a long series of collective bargaining agreements that included language identical to the language in Article VI. Indeed, plaintiff's representative, the Union, made clear that the identical language existed in predecessor collective bargaining agreements **"since at least 1972,"** or for 30 plus years, obviously covering the period of plaintiff's employment. Union's Brief, p.11 (attached as Tab 2 to Defendant's Reply Brief to Plaintiff's Opposition to Defendant's Motion to Dismiss).[2] Thus, no allegation or reasonable inference supports the conclusion that Plaintiff had a pre-existing independent agreement, i.e., one that existed prior to plaintiff being covered by the collective bargaining agreements between the Union and the Company.

Third, in his Complaint, plaintiff alleges that he is entitled to holiday pay because an arbitrator determined that the Company was obligated to pay certain employees for the holiday:

---

[1] In his Opposition, plaintiff stated only that his "claim for holiday pay arises out of an individual agreement between him and Defendant." Pl. Opposition at 1. In his Affidavit, Mr. Kelly asserted only that "For many years prior to 2002 Delta Beckwith and its predecessors had provided certain employees, including Plaintiff Dybes, with holiday pay for otherwise unpaid holidays including Columbus Day. These payments were made pursuant to individual promises made directly to the individual employees." Affidavit, ¶ 5.

[2] As described more fully in section II of the Motion to Dismiss, the Court may consider documents that are not exhibits to the Complaint when the parties do not dispute the authenticity of the documents.

DOWNS
RACHLIN
MARTIN PLLC                                         5

> In 2002 Defendant initially disputed Plaintiff Dybes' right to wages for Columbus Day, but eventually paid Plaintiff Dybes for Columbus Day 2002, following binding arbitration of the matter between Plaintiff's collective-bargaining representative, International Union of Elevator Constructors, Local 4, AFL-CIO, and Delta/Beckwith, in which the arbitrator determined that Delta/Beckwith was obligated to pay certain of its employees for Columbus Day.

Complaint, ¶ 6. Although plaintiff artfully drafted the Complaint to avoid mention of the CBA, the clear and obvious meaning of this allegation is that he was entitled to the holiday pay pursuant to the CBA and the Arbitrator's Award.

Fourth, the Arbitrator enforced the agreements or past practices of paying for the Columbus Day holiday not as separate agreements that predated the collective bargaining agreement, but as a part of the CBA. Indeed, the arbitrator could not have enforced separate contracts or agreements because he specifically had no authority to "add to, subtract from or modify in any way" the provisions of the CBA. Master Agreement, Article XV, par. 7 (attached as Exhibit A to Defendant's Motion to Dismiss). Consistent with this limitation on the arbitrator's authority, Plaintiff's representative argued, and persuaded the arbitrator, that the failure to pay Columbus Day holiday "violated an established past practice which over the years ***had become an enforceable part of the parties' collective bargaining relationship***." Union's Brief, p. 13 (emphasis added).[3] Thus, plaintiff did not have a right to holiday pay independent of the CBA nor did he assert rights independent of the CBA. The "contract" he relied upon for holiday pay was the CBA.

---

[3] Plaintiff's representative also argued that the "Company violated the collective bargaining agreements by failing to pay holiday pay to those employees who had previously celebrated Columbus Day as a paid holiday. Union's Brief at 21.

DOWNS
RACHLIN
MARTIN PLLC                                       6

For these reasons, this case is distinguishable from *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987), *TransPenn Wax Corporation v. McCandless*, 50 F.3d 217 (3d Cir. 1995) and *Hernandez v. Conriv Realty*, 116 F.3d 35 (2d Cir. 1997). In *Caterpillar*, the plaintiffs alleged in the complaint that the company had made promises "during the course of [their] employment as management or salaried employees," which were positions outside of the collective bargaining agreement. *Caterpillar*, 482 U.S. at 324-325. Thus, the collective bargaining agreement was irrelevant. *Id.* 482 U.S. at 395, n. 9.

In *TransPenn Wax*, the employer provided employees a written contract and guarantee of job security that would become effective when the employees decertified the union. The union was decertified, and the new agreements became effective. *TransPenn Wax*, 50 F.3d at 221. Thus, the collective bargaining agreement was no longer in effect and was irrelevant. In *Hernandez*, the plaintiff alleged that the employer made promises to induce him to "terminate his status as a union member, and to continue in [the company's] employ as a non-union worker," which he did. *Hernandez*, 116 F.3d at 37. Thus, since Hernandez was no longer working as a union employee, the collective bargaining agreement was not applicable.

In stark contrast, plaintiff was and continues to be covered by the CBA. Plaintiff's representative successfully argued and persuaded an arbitrator that the Company had to pay the 2002 Columbus Day holiday pursuant to the CBA. Plaintiff includes that fact in his Complaint when making a claim for holiday pay in 2003.[4] While the well-pleaded complaint rule makes the plaintiff the master of his claim, it does not permit a plaintiff to mask his real claim as a state law claim when it is obviously a claim of breach of a collective bargaining agreement, preempted

---

[4] In *Caterpillar*, the Court specifically noted that the plaintiff's individual employment contracts were not subject to the grievance and arbitration provisions of the collective bargaining agreement. Clearly, plaintiff's claims were subject to those provisions.

by the LMRA. As the Supreme Court held in *Caterpillar*, "[w]hen a plaintiff invokes a right created by a collective bargaining agreement, the plaintiff has chosen to plead what we have held must be regarded as a federal claim, and removal is at the defendant's option." *Caterpillar*, 482 U.S. at 399.

If ever there was a case to apply the artfully pleaded complaint exception to the well-pleaded complaint rule, this case is one. Since plaintiff's real claim is that the Company failed to pay him what an arbitrator had determined the Company had to pay pursuant to the CBA, the claim is one for breach of the CBA, a federal claim. Section 301 mandates resort to federal rules of law to ensure uniform interpretation whether there was an obligation under this CBA to provide holiday pay for Columbus Day in 2003, whether the employer breached that provision, and whether the employer provided proper notice to discontinue the practice. In order to answer those questions, a court, at the very least, will have to interpret the provisions of the Master Agreement and the local expense agreement to determine whether plaintiff is eligible to receive the holiday pay under Article VI, ¶ 3 of the Master Agreement and whether the Company provided adequate notice to the Union to discontinue the past practice of paying for the Columbus Day holiday under the terms of the local expense agreement.[5] As a result, the claim is preempted by section 301 because it requires interpretation of the CBA. *Sullivan v. Raytheon Co.*, 262 F.3d 41 (1st Cir. 2001).

---

[5] Article VI, ¶ 3 provides that "To be eligible for a paid holiday, an employee must have been on the Company's payroll within the calendar week . . . previous to the week in which the holiday occurs," and defines the phrase "on the payroll." The local expense agreement provides " This Agreement to become [sic] effective December 21, 1981, and shall remain in effect for a period of thirty (30) months, continuing thereafter as long as satisfactory to both parties. Sixty (60) days notice in writing shall be given by either party of their desire to change the Agreement and such written notice shall constitute cause for meeting of both parties." Agreement on Expenses, attached as Tab 1 to Defendant's Reply Brief.

DOWNS
RACHLIN
MARTIN PLLC

8

> D. **The Complaint Reveals A Colorable Question Of Federal Law Because The Underlying Nature of Plaintiff's Claim Is One That The Company Unilaterally Changed The Terms And Conditions Of Employment, Which Is Arguably An Unfair Labor Practice.**

As the First Circuit Court of Appeals noted in *BWI Deceived*, a state law negligence claim, when recharacterized, raised a colorable question of federal law that supported the exercise of federal question jurisdiction not only because it was preempted by § 301, but also because it sufficiently resembled an unfair labor practice charge against the union for breach of the duty of fair representation, which arises under section 8(b) of the LMRA.[6] *BWI Deceived*, 132 F.3d at 833. The same analysis applies in this case because plaintiff's state law claim sufficiently resembles an unfair labor practice charge against the Company for a unilateral change in the terms and conditions of employment, which arises under section 8(a) of the LMRA.[7] Indeed, plaintiff's representative made that exact claim regarding nonpayment in 2002. *See* Unfair Labor Practice Charge (attached as Exhibit B to Defendant's Motion to Dismiss).

Plaintiff's representative, the Union, established through the arbitration proceedings that payment for the Columbus Day holiday was a term and condition of his employment, and that he was entitled to the pay in 2002 because the Company had not provided proper notice to the Union to discontinue payment. When the Company did not pay for the holiday in 2003, it arguably changed a term and condition of employment unilaterally, which arguably is an unfair labor practice. "Though garbed in state-law raiment," plaintiff's claim sufficiently asserts a claim that the Company unilaterally changed a condition of employment without negotiating with the Union, which is prohibited as an unfair labor practice just as a breach of the duty of fair

---

[6] Section 8(b) identifies unfair labor practices by a labor organization. 29 U.S.C. § 158(b).
[7] Section 8(a) of the LMRA describes unfair labor practices by an employer. 29 U.S.C. § 158(a).

Downs
Rachlin
Martin PLLC                          9

representation constitutes an unfair labor practice. Thus, it passes the colorability test and supports federal question jurisdiction under *BWI Deceived.*

### E. Important National Policies Are Not Well Served When A Plaintiff Is Permitted To Assert A Claim in State Court After Raising The Identical Claim Under The CBA In An Arbitration Proceeding And Before The National Labor Relations Board.

As the Supreme Court has noted, the exclusive application of federal law serves important national policies: it "mandate[s] resort to federal rules of law in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 404 (1988). These important national policies are not well served if a plaintiff can argue one year in an arbitration proceeding that he is entitled to holiday pay under a collective bargaining agreement, and then is permitted to argue another year in state court that he is entitled to holiday pay under a separate agreement and state statute regardless of whether the employer has provided proper notice under the collective bargaining agreement to discontinue the practice. Such a result hardly supports the uniform interpretation of collective bargaining agreements nor does it promote the peaceable, consistent resolution of labor-management disputes.

### F. Conclusion

Plaintiff, through his representative, already litigated his claim for holiday pay for Columbus Day in 2002 under the CBA and established that he was entitled to that pay under the CBA. Complaint, ¶ 6; Union's Brief at 21; Award of Arbitrator at 10-11. Now, plaintiff makes the identical claim for holiday pay for Columbus Day in 2003, a claim that arises under the CBA and requires interpretation of the CBA. It is also a claim that is clearly within the purview of section 8 of the LMRA. Thus, the Complaint reveals colorable questions of federal law that

support the exercise of federal question jurisdiction. The Court has jurisdiction to consider and grant Defendant's Motion to Dismiss.

Burlington, Vermont.                    September 28, 2004

*/s/ Patricia M. Sabalis*
Patricia M. Sabalis
BBO # 436730
Downs Rachlin Martin PLLC
199 Main Street, P.O. Box 190
Burlington, VT 05402-0190
(802) 863-2375

Attorneys for Delta Elevator Service Corporation d/b/a/ Delta/Beckwith Elevator Company

I hereby certify that true copy of the above document was served upon Michael J. Doheny, the attorney of record for plaintiff Francis E. Dybes, by mail on September 28, 2004.

*/s/ Patricia M. Sabalis*

BTV.257716.6

DOWNS
RACHLIN
MARTIN PLLC

11